# EXHIBIT A

## SUMMONS

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

CASE NUMBER _CV06-812-5_

PLAINTIFF ___Kathy Stevens_____

VS.

DEFENDANT _____Chase Manhattan Mortgage Corporation_____

PLAINTIFF'S ATTORNEY ___James G. Lingle, LINGLE LAW FIRM_____

ADDRESS ___110 S. Dixieland Road, Rogers, AR 72758_____

THE STATE OF ARKANSAS TO DEFENDANT ___Chase Manhattan Mortgage___

__Corporation_____

ADDRESS _____


### NOTICE

1.  You are hereby notified that a lawsuit has been filed against
    you; the relief asked is stated in the attached complaint.

2.  The attached complaint will be considered admitted by you and
    a judgment by default may be entered against you for the
    relief asked in the complaint unless you file a pleading and
    thereafter appear and present your defense.  Your pleading or
    answer must meet the following requirements:

    A.  It must be in writing, and otherwise comply with the
        Arkansas Rules of Civil Procedure.

    B.  It must be filed in the circuit court clerk's office
        within twenty (20) days from the day you were served with
        this summons.

3.  If you desire to be represented by an attorney, you should
    immediately contact your attorney so that an answer can be
    filed for you within the time allowed.

4.  ADDITIONAL NOTICES _____

WITNESS MY HAND AND SEAL OF THE COURT THIS 21ST DAY OF APRIL, 2006.

> **BRENDA DESHIELDS, CIRCUIT CLERK**
> BENTON COUNTY CIRCUIT COURT
> 102 N.E. A STREET
> BENTONVILLE, AR 72712

BY: _____

Deputy Clerk

ON THIS _____ DAY OF _____, 200___ , I HAVE DULY SERVED THE
WITHIN COMPLAINT, BY DELIVERING A COPY AND STATING THE SUBSTANCE
THEREOF, TO THE WITHIN NAMED _____

                                KEITH FERGUSON
                                BENTON COUNTY SHERIFF


SHERIFF'S COSTS _____    BY: _____
                                    Deputy Sheriff



IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

Duncan

KATHY STEVENS                                                              PLAINTIFF

vs.                         NO. CIV 06-_812-5_____

CHASE MANHATTAN
MORTGAGE CORPORATION                                          DEFENDANT

## COMPLAINT

Plaintiff for her Complaint states:

1.      The Plaintiff is an individual who currently, and has been at all times relevant hereto, a citizen and resident of Benton County, Arkansas.

2.      Chase Manhattan Mortgage Corporation (hereinafter Chase) is a New Jersey corporation, with its principal place of business in Edison, New Jersey.  It is authorized to do business in and has locations within the State of Arkansas.

3.      The incidents that support the basis of this suit occurred, for the most part, in Benton County, Arkansas. This Court has jurisdiction over the subject matter under the  Fair Credit Reporting Act.  Venue is proper.

4.      On August 10, 2001, Plaintiff obtained a loan from the Bank of Rogers to purchase her home in Rogers, Arkansas, and gave the bank a mortgage on the property.  It was specifically agreed that there would be no escrow of any items and Plaintiff would pay taxes and insurance on her own. The Bank of Rogers immediately sold the loan to Washington Mutual.

5.      On or about January 30, 2002,  though Plaintiff had her own insurance, Washington Mutual force issued another homeowners policy through American Security Insurance and attempted to add an escrow and increase Plaintiff's monthly payments. Washington Mutual claimed that

Plaintiff had an escrow balance of $3,975.00. Attempts by Plaintiff and her insurance agent to remedy the situation with Washington Mutual were not successful. Washington Mutual sold the loan to Chase.

6.      On April 15, 2002, the Plaintiff spoke with John Illuid and Mrs. McKinney of Chase in an effort to resolve the escrow problem.

7.      On April 16, 2002, the Plaintiff sent to Chase a letter, once again, explaining what had happened with her account, stating that she had been discussing this problem on the telephone with John Illuid and Mrs. McKinney at Chase.

8.      On April 30, 2002, Washington Mutual sent a check to the Plaintiff in the amount of $3,975.00 as a refund of the insurance premiums which had been withheld from Plaintiff's payments, which payments Plaintiff had made in a timely fashion since August of 2001.

9.      On May 10, 2002, Plaintiff spoke with Lisa Washington at Chase, who assured Plaintiff that her account would be credited with all payments, that no late fees would be charged, and that Plaintiff's credit would not be affected.

10.     The Plaintiff received a letter from Chase on May 20, 2002, stating they had no record of any insurance on her loan.

11.     Despite having made all payments in a timely manner, Plaintiff received a notice of defaulted mortgage on July 8, 2002, and a notice that there was no insurance on her loan.

12.     On July 17, 2002, Chase sent a letter to Plaintiff thanking her for proof of insurance and telling her they will charge her $2,014 for the lapse period.

13.     On July 18, 2002, and August 18, 2002, Chase sent a letter to Plaintiff telling her that her mortgage payment was past due, even though she had made both payments on time.

2

14.    On August 25, 2002, Plaintiff, once again, sent a letter to Chase trying to straighten out her account.

15.    On September 8, 2002, Plaintiff received a notice of defaulted mortgage from Chase.

16.    On September 10, 2002, Plaintiff received a letter from Chase saying that they had force issued liability coverage on her property with Traveler Property Casualty.

17.    On September 25, 2002, Plaintiff received a certified letter giving her 30 days to "cure the default' or foreclosure action would begin.

18.    Plaintiff contacted Kay Weiderhaft, of the local Chase office, and enlisted her help in trying to resolve this matter.

19.    Even though Plaintiff did everything Kay Weiderhaft recommended, including sending a letter to Chase on October 7, 2002, telling Chase that she was working with Kay, Plaintiff received a notice of defaulted mortgage on October 8, 2002.

20.    On October 22, 2002, Plaintiff received a letter from Chase apologizing for "the delay and inconvenience this issue has cause you," and also stating, "We have forwarded your issue to the appropriate department for response."   As stated in a previous letter from James D. Mayfield, Director of Client Services, this letter said, "Chase's goal is to provide the highest level of quality service."

21.    On October 23, 2002, Plaintiff received a letter from Matthew M. Mawhorter, Correspondence Research Specialist, Consumer Services Research Center, Chase Manhattan Mortgage Corporation, stating, "We have forwarded your issue to the appropriate department for response.  You will receive confirmation as soon as this situation has been resolved," and stating,

3

"We value you as a customer and appreciate the opportunity to serve you. At Chase Manhattan Mortgage Corporation, serving you is our first priority."

22.     On October 24, 2002, Plaintiff received a letter from Monica S. Miller, Correspondence Research Specialist, stating, "We have added your correspondence to your loan-servicing file." Plaintiff responded by fax asking Ms. Miller to contact Kay Weiderhaft at the Chase office in Bentonville for clarification on this issue.

23.     On October 26, 2002, Plaintiff received an "acceleration warning" from Chase giving her 30 days to cure the default.

24.     On November 19, 2002, Plaintiff received a letter from Kevin Hudson, Research Associate, Chase Research Department, which documented the last three transactions in Plaintiff's escrow account, but did not address the main issue of Plaintiff being charged every month for an escrow account to pay for insurance that has already been paid.

25.     On November 25, 2002, Plaintiff received another "acceleration warning" from Chase.

26.     On December 8, 2002, Plaintiff received a notice of default from Chase.

27.     On December 26, 2002, Plaintiff received another "acceleration warning" from Chase.

28.     During the months of October through December, 2002, Plaintiff was dealing by fax and telephone with Dawn Johnson at Chase trying to get her account straightened out.

29.     On January 4, 2003, Plaintiff received a letter from Chase regarding her "delinquency of payments."

4

30.     On January 10, 2003, Plaintiff received a letter from Chase returning her payment because it was "less than total amount due."

31.     On January 30, 2003, Plaintiff cause a debit check to be issued to Chase in the amount of $7,067.25.

32.     On January 31, 2003, Chase sent a letter to Plaintiff notifying her that they were forwarding her loan file to an attorney to initiate foreclosure proceedings.

33.     On February 5, 2003, Plaintiff received a letter from Wilson & Associates, P.L.L.C., advising her that she was in default and they would be initiating foreclosure proceedings.

34.     On February 12, 2003, Plaintiff, once again, received a letter returning her payment of $7,067.25 because it was "less than total amount due."

35.     On February 21, 2003, Plaintiff received a letter from Wilson & Associates asking for documentation.

36.     On February 25, March 14, and March 27, 2003, Plaintiff sent e-mail messages to Alexandra at Wilson & Associates in an effort to resolve this issue. On March 11, 2003, Chase filed a Notice of Default and Intention to Sell stating that Kathy's property would be sold to the highest bidder for cash on May 12, 2003 at or about 1:30 P.M. was filed with the circuit clerk.

37.     On March 27, 2003, Plaintiff sent a letter to Christine Thomas at Chase DPP sending payments and asking for a printout of her payments.

38.     On April 2, 2003, Wilson & Associates sent a letter to Client notifying her of upcoming foreclosure and sending a copy of Mortgagee's Notice of Default and Intention to Sell.

5

39.     On April 28, 2003, Plaintiff sent a letter with her May payment to Christine Thomas at Chase and asking for written verification that her payments were current.  The following day, April 22, 2003, Chase filed a Notice of Cancellation of Nonjudicial Foreclosure Sale.

40.     On May 25, 2003, Plaintiff sent a letter to Christine Thomas at Chase asking that someone contact her.

41.     On June 3, 2003, Chase sent an "acceleration warning" letter to Plaintiff.

42.     After repeated telephone calls, e-mails, and correspondence with no satisfactory resolution, Plaintiff retained an attorney, J. Trail Rogers, who wrote a letter to Chase on June 13, 2003.

43.     On June 26, 2003, Chase wrote to J. Trail Rogers stating that his letter was "forwarded to the appropriate department for response," and "Chase's goal is to provide the highest level of quality service."

44.     On August 4, 2003, Chase sent another "acceleration warning" letter to Plaintiff.

45.     On August 15, 2003, J. Trail Rogers sent a letter to Chase asking for a resolution to this matter.

46.     On August 25, 2003, Chase sent a letter to J. Trail Rogers stating that he had "forwarded your inquiry to the appropriate department for response," and "Chase's goal is to provide the highest level of quality service."

47.     On September 3, 2003, and November 4, 2003, Chase sent "acceleration warning" letters to Plaintiff, even though she had made her monthly payments in a timely fashion..

48.     On November 7, 2003, Chase sent a notice of defaulted mortgage to Plaintiff.

49.     On December 5, 2003, Chase sent an "acceleration warning" letter to Plaintiff.

6

50.   On December 8, 2003, and January 7, 2003, Chase sent notices of defaulted mortgage to Plaintiff.

51.   On January 28, 2003, Plaintiff sent her monthly payment to Christy Page and Carie Shafer, the employees at Chase with whom she had been dealing since December, 2003.

52.   On February 3, April 2, and August 2, 2004, Chase sent "acceleration warning" letters to Plaintiff.

53.   On August 8, 2004, Chase sent a notice of defaulted mortgage to Plaintiff.

54.   On August 25, 2004, Chase sent a letter to Plaintiff regarding her delinquent payments.

55.   On September 10, 2004, Chase sent a letter to Plaintiff returning her monthly payment because it was "less than amount due."

56.   On October 5, 2004, Chase sent a letter to Plaintiff notifying her that they had forwarded her loan to an attorney to initiate foreclosure proceedings.

57.   On October 12, 2004, Wilson & Associates, P.L.L.C., sent a letter to Plaintiff advising her that she was in default and they would be initiating foreclosure proceedings and the defendant has continued to demand payment of the unjust charges, and it still refuses to accept Plaintiff's payments, and continues to report unfavorably on her credit and continues to harass her.

58. The actions of the Defendant constitute harassment, slander of title, outrage, breach of contract, violations of the Arkansas Fair Trade Practices Act, violations of the Fair Credit Collections Act, a breach of contract, negligence, and violation of the Fair Credit Reporting Act.

7

59.     Defendant's actions have been taken with malice and/or willful and wanton misconduct from which malice can be implied, and the actions were taken knowing that the injury would certainly result.

60.     As a proximate result of the defendant's actions, the Plaintiff's credit has been damaged, she has been unable to refinance, and she has been unable to get loans at a reasonable interest rate, she has had credit denied, she has been humiliated and suffered mental anguish..

WHEREFORE, Plaintiff, Kathy Stevens, prays that she be granted judgment against the Defendant, Chase Manhattan Mortgage Corporation, for compensatory damages in excess of that required for federal diversity jurisdiction and for punitive damages in the amount in excess of that required for federal diversity jurisdiction; for her costs and attorney's fees; and for all other relief to which she may be entitled.

KATHY STEVENS - Plaintiff

By: _____
James G. Lingle, Ark No. 76070
Lingle Law Firm
110 South Dixieland Road
Rogers, Arkansas  72758
479-636-7899
479-636-0095 Fax

8